No. 26-6008

**CAPITAL CASE**
Execution Date: February 12, 2026, at 10:00 AM

---

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

Kendrick Simpson,

*Petitioner-Appellant*,

v.

Christe Quick, in her official capacity as Warden of the Oklahoma State Penitentiary; Justin Farris, in his official capacity as interim Executive Director of the Oklahoma Department of Corrections; Gentner Drummond, in his official capacity as Attorney General of Oklahoma,

*Respondent-Appellee*.

---

**APPELLANT KENDRICK SIMPSON'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

---

Appeal from the United States District Court
for the Western District of Oklahoma District of Oklahoma
5:25-cv-01221-D

---

Brendan Van Winkle, SC Bar #104768
Assistant Federal Public Defender
Emma V. Rolls, OBA #18820
First Assistant Federal Public Defender
Federal Public Defender's Office
Western District of Oklahoma
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
Phone: (405) 609-5975
Fax:    (405) 609-5976
Brendan_VanWinkle@fd.org
Emma_Rolls@fd.org
*Counsel for Petitioner-Appellant Kendrick Simpson*

**ORAL ARGUMENT REQUESTED**

---

February 5, 2026

# REHEARING STATEMENT[1]

The full Court's consideration is necessary to maintain uniformity because the panel decision conflicts with decisions of this Court and the Supreme Court. The issues presented are:

- Whether *Rooker-Feldman* abstention jurisdictionally bars Simpson's challenge to the state procedural process.

- Whether Eleventh Amendment immunity jurisdictionally bars Simpson's challenge to the state procedural process.

These questions are of exceptional importance. Three times in the last three years, the Supreme Court has granted certiorari to consider similar issues.[2] *Reed*, *Gutierrez*, and *Wood* all originated in the Fifth Circuit. In each case, the Supreme Court reversed or vacated the Fifth Circuit decision. The panel decision heavily relies on a Fifth Circuit decision that predates the Supreme Court's decisions in *Reed*, *Gutierrez*, and *Wood*. Doc. 29-1 at 8-9 (citing *Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711 (5th Cir. 2021). Respectfully, the full Court or the panel should grant rehearing.

---

[1] 10th Cir. R. 40(b).
[2] *See Reed v. Goertz*, 598 U.S. 230 (2023) (holding that a challenge to state postconviction procedures is not barred by *Rooker-Feldman* abstention or Eleventh Amendment immunity); *Gutierrez v. Saenz*, 606 U.S. 305 (2025) (holding that plaintiff challenging state postconviction procedures had standing to sue state prosecutor); *Wood v. Patton*, No. 24-6727 (June 30, 2025) (GVR'ing, in light of *Gutierrez*, a lower court's holding that plaintiff challenging state postconviction procedures lacked standing to sue state prosecutor).

## **INTRODUCTION**

Simpson raised a constitutional challenge under 28 U.S.C. § 1983 to the procedural process he encountered in state court. ROA at 10-12. His claim is patterned off the claims in *Reed*, *Gutierrez*, and *Wood*. In each case, the Supreme Court held that the federal district court had jurisdiction to consider the challenge to state postconviction procedures. These three cases stem from two earlier cases, one in 2009 and the other in 2011, where the Supreme Court permitted § 1983 challenges to state procedural processes. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). In all five cases, the Supreme Court held that the federal district courts could consider the plaintiffs' § 1983 challenges to state procedural processes.

Relatedly, in the last century, "the Supreme Court has enforced the *Rooker-Feldman* limit on the jurisdiction of the federal courts just twice."[3] *In re Smith*, 349

---

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) ("Since *Feldman*, [the Supreme] Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction."); *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule."); *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020) (Sutton, J., concurring) ("*Rooker- Feldman* developed into an inscrutable abstention doctrine, an untethered way for federal courts to defer to state court litigation of related cases and controversies and a new way to avoid deciding federal questions."); *id*. at 404-09 (tracing how *Rooker-Feldman* started as an "implication" and grew into a "doctrine" that "continues to wreak havoc across the country").

2

F. App'x 12, 17 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part). First in *Rooker*. Then in *Feldman*. The Supreme "Court's most recent applications of the doctrine suggest that may be it—that, if the party's name is not Rooker or Feldman, or if the case does not present a virtually identical challenge, it is unlikely that the doctrine strips the federal courts of jurisdiction to hear the claim." *Id*.

Moreover, challenges to state procedures under § 1983, like Simpson's, were explicitly contemplated and permitted by the Supreme Court in *Osborne*, *Skinner*, *Reed*, and *Gutierrez*. It is unlikely "the Court invited what *Rooker-Feldman* prevents." *In re Smith*, 349 F. App'x at 18 (Sutton, J.). Indeed, the Supreme Court is currently considering a case where the petitioner has suggested scrapping the doctrine altogether. Brief for Petitioner at 44-47, *T.M. v. Univ. of Md. Med. Sys. Corp.*, No. 25-197; *see also VanderKodde*, 951 F.3d at 405 (Sutton, J., concurring) ("Here's to urging the Court to give one last requiem to *Rooker-Feldman*.").

Despite the Supreme Court's unidirectional movement toward a narrower and potentially nonexistent *Rooker-Feldman*, the panel decision here held that Simpson's § 1983 challenge to state procedures was barred by *Rooker-Feldman* because Simpson cannot successfully challenge the state process "without reversing or otherwise invalidating the OCCA's ripeness holding." Doc. 29-1 at 6. That is wrong. OCCA held that Simpson's challenge to the execution statute was unripe despite his upcoming execution, and Simpson asked the federal district court to find

3

the state process unconstitutional and bar his execution under it. ROA at 43; Order at 3, *Underwood v. Harpe*, PR-2024-637 (Okla. Crim. App. Sept. 17, 2024). He requested declaratory and injunctive relief, but he clarified that the district court could "declare the state process unconstitutional without enjoining the execution." ROA at 12.

*Feldman* itself is instructive. There, the Supreme Court acknowledged that constitutional challenges to rules were viable, and it explicitly allowed the plaintiffs' claims that challenged the D.C. bar's rule that members must have graduated from a law school accredited by the American Bar Association. 460 U.S. at 487. These permitted claims challenged a rule, not a judgment, and therefore were not barred. "Indeed, the plaintiffs' success in the permitted challenge to the rule would establish that the denial of the waiver had been improper, and would likely lead to a later successful request for a waiver, thereby relieving the plaintiffs of some of the harm caused by the 'judgment' denying a waiver." *Campbell v. City of Spencer*, 682 F.3d 1278, 1282 (10th Cir. 2012). "Thus, the *Rooker-Feldman* doctrine does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment." *Id*.

At worst, Simpson's federal challenge to the state procedural process is ameliorative of the state court judgment. To be sure, if federal relief was granted, the state court would be under no obligation to reconsider its ruling on the

nondelegation claim. If reconsidered, the state court would be free to hold that the execution statute is constitutional, that the statute does not violate the nondelegation doctrine, and that the state case is nonjusticiable. The state court could again hold that the nondelegation claim is unripe, so long as it does not rely on unconstitutional rules to do so. In sum, a "party may lose in state court and then raise precisely the same legal issues in federal court, so long as the *relief sought* in the federal action would not reverse or undo the *relief granted* by the state court." *Mo's Express v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006) (emphasis in original). The relief Simpson requested in federal court would not reverse or undo the state court judgment, so his federal action is not barred by *Rooker-Feldman*.

And Simpson's federal action is not barred by the Eleventh Amendment. Taking blighted land, legally under state law, but without lawful process violates the federal constitution. *M.A.K. Investment Group v. City of Glendale*, 897 F.3d 1303, 1319 (10th Cir. 2018). Taking a life without lawful process, even if substantively permitted under state law, is no different. But the panel decision confuses the state court merits with its *Ex parte Young* analysis. The panel decision concludes:

> But he also admits that "[t]he constitutionality of lethal injection is settled law" and there is "no indication that lethal injection in Oklahoma is or will become unavailable." Op. Br. at 14–15. Thus, Mr. Simpson's harm derives not from the defendants' actions, but from the OCCA's holding in *Underwood*.

5

Doc. 29-1 at 10. Put differently, the panel decision claims Simpson is not injured by the prison[4] because the prison will execute him by lethal injection and that method is constitutional. *Id*. But that is not the issue here. The issue here is whether the state process is lawful.

Simpson's execution is next week, and he is harmed by the prison executing him. In state court, he raised a facial challenge to the Oklahoma statute under which the prison will execute him. The statute authorizes executions and the prison's use of execution methods. Okla. Stat. Ann. tit. 22, § 1014. But under the state process, imminent death under an unlawful statute is not a cognizable harm, and so the execution statute and the prison's actions directed by it are insulated from judicial scrutiny. Order at 3, *Underwood v. Harpe*, PR-2024-637 (Okla. Crim. App. Sept. 17, 2024). Simpson asked the district court to declare that process unconstitutional. ROA at 43. Like in *Reed* and *Gutierrez*, the prison cannot justify its actions by relying on a statute that is attached to allegedly unconstitutional procedures. *Reed*, 598 U.S. at 234-35; *Gutierrez*, 606 U.S. at 315-16. As a result, if the requested relief is granted, the district court will declare the state process unconstitutional and eliminate the prison's justification for executing him. *Id*. Director Farris, Warden

---

[4] All three Defendants are collectively referred to as the prison. As explained in the complaint, the prison officials provide the means and location for the execution, while the attorney general prosecutes the legal justification and defends the death sentence and execution statute. ROA at 12-14.

6

Quick, and Attorney General Drummond are the correct defendants. Indeed, as detailed in the briefing (especially the reply), Simpson's jurisdictional arguments are stronger than the arguments in *Reed* and *Gutierrez*. Doc. 9 at 43-49; Doc. 25 at 17-31.

    The panel decision's claim about lethal injection being constitutional resembles more a decision on the state court merits than an analysis under *Ex parte Young*. In state court, Simpson raised a facial challenge to the Oklahoma execution statute, arguing it violated the state constitution's nondelegation doctrine in every case regardless of application. Doc. 25 at 8-11; *see also* ROA at 22; Petitioners' State Brief at 6, *Underwood v. Harpe*, PR-122401 (Okla. July 31, 2024); Petitioners' State Application at 10-13, *Underwood v. Harpe*, PR-122401 (Okla. July 31, 2024). Lethal injection being constitutional does not solve the state court controversy because Simpson challenged the prison's use of lethal injection as well as its use of any other method. *Id*. And it does not solve the federal jurisdictional issues raised here because the "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the [federal, let alone state,] claim." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636-37 (2002). Rather, it is enough that the plaintiff "seeks relief properly characterized as prospective." *Id*. at 645. A "prayer for injunctive relief—that state officials be restrained from enforcing an

7

order in contravention of controlling federal law—clearly satisfies [*Ex parte Young*'s] 'straightforward inquiry.'" *Id*.

Simpson is injured by his execution, so he sued the state officials charged with executing him. He requested declaratory and injunctive relief. If federal relief is granted, his state case would still be dismissed as unripe, and the state court would be free to again hold that the nondelegation claim is unripe. But the state court cannot engage unlawful procedures that insulate Oklahoma's execution statute from judicial review. His federal action is not barred by *Rooker-Feldman* or the Eleventh Amendment.

## ARGUMENT

### I. The panel decision conflicts with decisions of this Court and the Supreme Court.

The panel decision held that Simpson's federal action is barred by *Rooker-Feldman*. It distinguished *Skinner*, *Reed*, and *Gutierrez* by claiming they challenged statutes, while Simpson does not challenge a statute. Doc. 29-1 at 7-9. But avoiding the *Rooker-Feldman* bar is not dependent on whether a statute is being challenged. The Supreme Court has made clear that "a state-court decision is not reviewable by lower federal courts, but a statute *or rule* governing the decision may be challenged in a federal action." *Skinner*, 562 U.S. at 532 (emphasis added). In *Feldman*, the Supreme Court expressly approved of the plaintiffs' challenges to Rule 46I(b)(3) of the D.C. bar membership rules. 263 U.S. at 487. Rule 46I(b)(3) was not a statute,

8

and it had even been waived in the years immediately before the *Feldman* plaintiffs challenged the rule. *Id.* at 467, 470.

Moreover, Skinner challenged "Texas' postconviction DNA statute 'as construed' by the Texas courts." *Skinner*, 562 U.S. at 530. He did not challenge any statutory text. *Id.*; Oral Arg. at 52-57. Rather, he challenged the state postconviction statute's lack of an exception for people who were convicted before the statute was in effect. *Id.*; Oral Arg. at 55. Likewise, Simpson challenged the state procedures "as construed" by the state courts. OCCA construed the declaratory judgment statute to include an unwritten exception that is antithetical to the rest of the statute: The execution statute cannot be challenged unless lethal injection is unconstitutional or unavailable. In his complaint and opening brief, Simpson explains why this rule is unlawful and antithetical to the ordinary and well-established procedures enjoyed by all Oklahoma litigants. ROA at 14-27; Doc. 9 at 17-33. Like Skinner, Simpson challenges the declaratory judgment act "as construed" by the state courts.

And the panel decision relied on the Fifth Circuit's decision in *Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711 (5th Cir. 2021). *Reed* and *Gutierrez* are controlling precedent, while *Rhoades* is an unpublished decision from another circuit. And in his complaint, Rhoades argued the district court deprived him of his constitutional interest in accessing juror information. *Rhoades v. Martinez*, 4:21-cv-02422 (S.D. Tex. July 26, 2021); *but see Osborne*, 557 U.S. at 68 (holding that there

are no *Brady* rights after conviction). Specifically, Rhoades said, "Judge Martinez's action in denying him that process by refusing to issue a decision on the merits of his motion has violated his rights under the Fourteenth Amendment." *Id*. at ¶ 58. *Rhoades* was a clear challenge to a state court decision and is not applicable here. Additionally, the Fifth Circuit relied on the phrase "inextricably intertwined" to apply the *Rooker-Feldman* bar. But this Court has thought "it best to follow the Supreme Court's lead, using the *Exxon Mobil* formulation and not trying to untangle the meaning of *inextricably intertwined*." *Campbell v. Buckley*, 682 F.3d 1279, 1283 (10th Cir. 2012) (emphasis in original).

Instead, the Court should rely on *Reed* and *Gutierrez*. In both cases, state prosecutors denied access to evidence that the plaintiffs were seeking to test for DNA. *Reed*, 598 U.S. at 234-35; *Gutierrez*, 606 U.S. at 315-16. The Supreme Court allowed their federal challenges to state procedures to proceed because the prosecutors injured the plaintiffs by denying testing and a federal court declaring the procedures unlawful "would eliminate the state prosecutor[s'] justification for denying DNA testing." *Id*. Without the justification, the prosecutors would likely allow testing, redressing the plaintiffs' injuries. *Id*. Likewise, even though Simpson challenges state procedures, his injury in federal court is the prison executing him. He is harmed by Defendants' actions, just as the plaintiffs in *Reed* and *Gutierrez* were harmed by the state prosecutors' actions. Declaring the Oklahoma procedures

unlawful would eliminate the prison's justification for executing him, and it would redress his injury. At the same time, it would have no impact on the state court judgment.

Additionally, the panel decision noted that the "allegations of Mr. Simpson's complaint illustrate that his claims rest so fully on the OCCA's ripeness holding that his § 1983 claims simply would not exist absent that holding." Doc. 29-1 at 7. It goes on to say, "As Mr. Simpson himself declares in the opening brief: 'Simpson's nondelegation challenge in state court gave rise to his federal action.'" *Id*. But this is true of many challenges to state procedures. After all, Skinner challenged, "as denying him procedural due process, Texas' postconviction DNA statute *'as construed' by the Texas courts*." 562 U.S. at 530 (emphasis added). In *Reed*, the plaintiff did "not challenge the adverse" state-court decisions themselves, but rather "target[ed] as unconstitutional the Texas statute *they authoritatively construed*." 598 U.S. at 235 (quoting *Skinner*, 562 U.S. at 530) (emphasis added). In *Gutierrez*, the plaintiff argued that the "*Texas courts interpret* Article 64 to impose a virtually insurmountable barrier to obtaining DNA testing," "it was unfair *for the TCCA not to consider new evidence* he had proffered since his trial," and "that, *as interpreted by the TCCA*, Article 64 violates the Due Process Clause…." 606 U.S. at 312-13 (emphasis added). The Supreme Court held that all three plaintiffs had jurisdiction (with *Skinner* and *Reed* specifically rejecting *Rooker-Feldman*), and all three

11

plaintiffs' "§ 1983 claims simply would not exist absent [the state court] holding[s]." Doc. 29-1 at 7.

Indeed, the panel decisions argued that OCCA caused Simpson's injury because Simpson's complaint said that "[w]ithholding adjudication because of the ripeness determination was tremendously harmful to Mr. Simpson and the other plaintiffs." Doc. 29-1 at 6 (citing ROA at 27, ¶ 61). In paragraph 61, Simpson is not complaining of an injury caused by OCCA. ROA at 27, ¶ 61. Instead, he is describing how ripeness is ordinarily evaluated to juxtapose the ordinary process with the process that Simpson received. ROA 26-27. The heading of that section is: "The ripeness burden contradicted basic principles of justiciability." ROA at 26. "Ironically, instead of ripening the claim," Simpson argued, "the ripeness burden was more likely to make the claim unripe." ROA at 26, ¶ 60. Simpson showed how his claim was clearly ripe under traditional ripeness principles, so he could argue that the "state process turned the ripeness inquiry on its head." ROA at 26, ¶ 58. He did not argued that OCCA's ripeness decision should be reversed.

Simpson argued the process he received in state court was fundamentally unfair, and he used the ordinary process that everyone else enjoys as an example of a fair or traditional process. He does this repeatedly throughout the complaint:

- "Instead of ordinary pre-enforcement procedures, the state process introduced an overwhelming ripeness burden that was discordant with the underlying claim and basic principles of justiciability. The process was akin to requiring

12

a plaintiff to prove a statement true before claiming it is defamatory." ROA at 17, ¶ 35.

- After detailing the ordinary state declaratory procedures, Simpson detailed federal procedures: "Even compared to federal law, where justiciability doctrines are stricter, the state procedural process was irrational. Compare *City of Oklahoma City v. Oklahoma City Urban Renewal Auth.*, 988 P.2d 901, 907 (Okla. 1999) (finding an issue justiciable based on its "public importance") with *Allen v. Wright*, 468 U.S. 737, 756-57 (1984) (applying a stricter standard because the "constitutional importance" of an issue does not confer standing); *see also Fent v. Contingency Rev. Bd.*, 163 P.3d 512, 520 (Okla. 2007) (recognizing taxpayer standing in Oklahoma courts)." ROA at 19-20, ¶ 41.

- "Under state and federal law, Mr. Simpson's nondelegation claim would be ripe if he faced a credible and imminent threat of execution under the statute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *Toxic Waste Impact Grp., Inc. v. Leavitt*, 890 P.2d 906, 912 (Okla. 1994). He did. But he did not encounter lawful procedures. Rather, to establish ripeness, Mr. Simpson had to show that lethal injection was unconstitutional or unavailable. Order at 2-3, *Underwood v. Harpe*, PR-2024-637 (Okla. Crim. App. Sept. 17, 2024)."

Simpson's entire case is based on comparing ordinary, well-established, and fair procedures to the foreign and unfair procedures he encountered.

## II. The panel decision did not consider a fundamental issue under *Rooker-Feldman*.

Under *Rooker-Feldman*, all "that's at issue is the meaning of a jurisdictional provision—a matter of statutory interpretation, not a free-flowing exercise in identifying new explanations for diminishing federal jurisdiction." *VanderKodde*, 951 F.3d at 408 (Sutton, J.). *Skinner* explained that the purpose of *Rooker-Feldman* is to effectuate 28 U.S.C. § 1257, which requires a federal question and "vests

13

authority to review a state court's judgment solely in [the Supreme] Court." 562 U.S. at 531-32 (quoting *Exxon*, 544 U.S. at 292). "District Courts lacked subject-matter jurisdiction over such claims." *Id*. The "*Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court." *Verizon*, 535 U.S. at 644 n.3. The panel decision recognized this component of *Rooker-Feldman*, but it did not consider whether Simpson's state claim could be raised in the Supreme Court's exclusive jurisdiction under 28 U.S.C. § 1257. Doc. 29-1 at 5.

In the district court, Simpson invoked the court's jurisdiction under 28 U.S.C. § 1331 to raise federal constitutional claims. ROA at 10. In the state court, Simpson raised one state constitutional claim and did not invoke federal law, so he could not have raised the federal constitutional claims presented below in the Supreme Court under 28 U.S.C. § 1257. ROA at 14-17; *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) (the Supreme Court is a "a court of review, not of first view"). Simpson did not ask the district court to review a state court decision otherwise reserved for the Supreme Court.

### III. The panel decision confuses Simpson's jurisdictional burden for an evidentiary burden.

In his opening brief, Simpson argued the district court engaged too strict of a standard under Rule 12(b)(1) by requiring Simpson to overcome a "presumption"

14

against jurisdiction. Doc. 9 at 39-43. The panel decision said, "Mr. Simpson is incorrect in asserting that the presumption formed the basis of the district court's dismissal." Doc. 29-1 at 5. "Rather, the district court's determination that his claims were jurisdictionally barred was based on its examination of the allegations of the complaint, which the district court correctly accepted as true."

But the panel decision never described the burden Simpson must show to establish jurisdiction at this stage. It treated the burden as an evidentiary issue, essentially holding that the allegations in the complaint either established jurisdiction or not. Instead, Simpson's burden to establish jurisdiction is "relatively modest at this stage of the litigation." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). "Regardless of the character of the Rule 12(b)(1) motion, it is well-settled that the complaint will be construed broadly and liberally, in conformity with the general principle set forth in Rule 8(e)." 5B C. Wright, A. Miller, & A. Spencer, Federal Practice and Procedure § 1350 (4th ed. 2024). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (brackets and quotation marks omitted). Simpson has plausibly alleged jurisdiction, and the district court's *Rooker-Feldman* and Eleventh Amendment rulings were wrong to hold

otherwise. *Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 798 n.3 (10th Cir. 2025); *Silha v. ACT*, 807 F.3d 169, 174 (7th Cir. 2015).

## CONCLUSION

The Court should grant rehearing and reverse the district court's rulings that it lacked jurisdiction under *Rooker-Feldman* and the Eleventh Amendment.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel requests oral argument. Due to the complex legal and factual issues in this capital case, oral argument will materially assist the Court in adjudicating these matters.

Respectfully submitted,

/s/Brendan Van Winkle
Brendan Van Winkle, SC Bar #104768
Assistant Federal Public Defender
Emma V. Rolls, OBA #18820
First Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
Phone: (405) 609-5975
Fax:   (405) 609-5976
Brendan_VanWinkle@fd.org
Emma_Rolls@fd.org

COUNSEL FOR PETITIONER/APPELLANT,
Kendrick Simpson

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2026, I electronically filed the foregoing Appellant's *Petition for Rehearing* with the Clerk of the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. All counsel of record are registered CM/ECF users and will be served by the CM/ECF system.

>  */s/Brendan Van Winkle*
> *BRENDAN VAN WINKLE*
> *Assistant Federal Public Defender*

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that with respect to the foregoing Appellant's Opening Brief that: (1) all required privacy redactions have been made pursuant 10th Cir. R. 25.5; (2) the hard copies submitted to the Court via ECF submission are exact copies of the version submitted electronically, and (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Endpoint Protection, Version 14.000.15.105, updated daily, and according to the program, s free of viruses.

*February 5, 2026*    */s/Brendan Van Winkle*
> *BRENDAN VAN WINKLE*
> *Assistant Federal Public Defender*

## CERTIFICATE OF COMPLIANCE

1. ***Petitioner-Appellant's Petition for Rehearing*** complies with the type-volume limitation of Fed. R. App. P. 32(g) because this brief contains 3,887 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. ***Petitioner-Appellant's Petition for Rehearing*** complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*February 5, 2026*    */s/Brendan Van Winkle*
> *BRENDAN VAN WINKLE*
> *Assistant Federal Public Defender*